# OFFICE OF
# THE ATTORNEY GENERAL
### AUSTIN, TEXAS


**PRICE DANIEL**
ATTORNEY GENERAL

June 23, 1947

Hon. Roy C. Snodgrass, Jr.
County Attorney
Potter County
Amarillo, Texas

Attention: Hon. John Peterson,
Assistant County Attorney

Opinion No. V-261

Re: Authority of the Com-
missioners' Court of
Potter County to expend
county funds in the im-
provement of city streets
in Amarillo.

Dear Mr. Snodgrass:

Your request for an opinion of this Depart-
ment is substantially as follows:

"The Commissioners' Court of Potter
County is desirous of spending approximate-
ly $25,000.00 out of the county road and
bridge fund for the improvement of streets
in the City of Amarillo. It is their plan
to work with the city officials on this
program and on each part of the city streets
which are improved a percent of county funds
will be used, and an equal percent of city
funds will be used, and a percent will be
paid by each individual land owner adjoining
the street. The question has arisen as to
whether or not the Commissioners' Court can
legally expend county road and bridge funds
for any and all of the streets in Amarillo
that they desire to improve, or stated an-
other way the question is, are all of the
streets in Amarillo a part of the 'county
road system'?

". . ."

"In Potter County the majority of
the population is located within the city
limits and the majority of the roads are
in the city limits and it is my opinion
that the Supreme Court did not mean to
limit a county such as ours by allowing
the Commissioners' Court to only improve
a road in the city limits when it only
connects a county road coming into the
city on one side and going out on the
other. Another feature of Potter County
is that the city, although situated most-
ly in Potter County, goes into Randall
County on the South side and a strict con-
struction of the Stephens County case would
mean that the Commissioners' Court cannot
spend any funds on roads coming into the
city from the North side as it would be
impossible to connect with the county road
on the South side of Amarillo."

Generally speaking, it is a well settled
proposition of law that the control and jurisdiction
over streets of a municipal corporation is exclusive
in said corporation and counties have the right to ex-
pend funds in the improvement of streets within the
corporate limits of a city when said streets are a
part of the county road system and when done with the
consent of the city.

In the case of Hughes v. County Commission-
ers' Court of Harris County, 35 S. W. 2d 818, the Court
stated as follows:

"The county has, by virtue of the
provisions of the general laws of this
state, as well as by the Harris County
local road law, the right to expend its
funds in the improvement of a street
within the corporate limits of a city
which is also a public road of the coun-
ty, especially so when such improvement
is done with the consent and invitation
of the city authorities. . .

"In obedience to the mandate of
article 8, section 9, of the Constitu-
tion, which we think self-enacting, the.

Legislature in 1911 and 1899 passed what is now articles 2351 and 2352 of our Civil Statutes. By article 2351, the commissioners' courts were authorized among other things, to lay out and establish public roads and to exercise general control over all public roads in their respective counties, and by article 2352 such court is authorized to levy and collect taxes for road purposes and for the erection of public buildings, streets, sewers, etc. The right to levy and collect taxes for certain purposes carries with it the right to expend the funds when so collected to carry out the purposes for which it was collected. It is immaterial to inquire whether the dominion and control over roads is given by statutes other than the articles named. Article 2352 clearly carries with it the implied power of the commissioners' courts to expend the road funds of their respective counties in the improvement of streets, especially such streets as constitute a part of a public road of the county, because by the provisions of the Constitution counties are given the right to levy and collect taxes for the improvement of both roads and streets. . .

"The weight of authority seems to indicate that under the general law the counties have the constitutional and statutory power to expend their road funds in the improvement of their roads which pass through a municipality, and that they have the right to improve such roads though they be streets of such municipalities, with the consent of the municipalities. State v. Jones, 18 Tex. 874; Smith v. Cathey (Tex. Civ. App.) 226 S. W. 158; Benat v. Dallas County (Tex. Civ. App.) 266 S. W. 540."

The same rule was announced in the case of the City of Breckenridge v. Stephens County, 40 S. W. 2d 43, wherein Judge Critz, speaking for the Supreme Court, stated as follows:

"After a careful investigation of the authorities, including the Constitution and laws of this State, we have reached the conclusion that the commissioners' court does have lawful authority to expend county road bond funds for the improvement of city streets where such streets form integral parts of county roads or state highways, when such improvements are made without conflicting with the jurisdiction of the municipality, or with its consent or approval. Section 52, art. 3, Texas Constitution; State v. Jones, 16 Tex. 874; Smith v. Cathey (Tex. Civ. App.) 226 S. W. 158, 160; Cannon v. Healty Construction Co. (Tex. Civ. App.) 242 S. W. 526, 529 (writ refused).

"Section 52 of article 3 of our State Constitution authorizes counties and political subdivisions and defined districts thereof to issue bonds for the purpose of: '(c) The construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes, or in aid thereof.'

"The constitutional provision above referred to expressly provides that road districts 'may or may not include towns, villages or municipal corporations.' Thus by the express terms of the Constitution a municipal corporation may be an integral part of a road district. As a part of the road district, the property of the city or town is subject to road district taxes just the same as property of the district located outside such municipality. If a city or town is a part of a road district, the commissioners' court has the

right by the very express provisions
of the Constitution to expend road dis-
trict bond funds on such town or city
streets where such streets are parts of
and form connecting links in county of
state highways."

It will be observed from the foregoing that
if an improvement is made, the same must be confined to
the streets forming a part of the county road system,
and must be done with the consent of the municipal cor-
poration within which said streets are located.  In the
Breckenridge case above cited, a distinction was drawn
between streets forming a part of a county road system
and streets generally.  It was held that the Commission-
ers' Court could bind itself to spend county road bond
funds to aid the city in improving streets forming a
part of the county roads but could not bind itself to
aid the city in improving other streets.  It is obvious
that they intended to draw a distinction between streets,
speaking generally of the arteries of traffic within a
municipality, and such streets as form a continuation of
a county road, but in any event a street which has been
designated by a county as a part of its system.  (Attor-
ney General's Opinion No. 0-1190)  Inasmuch as a county
may, with the consent of the city, improve the streets
of such city forming a part of the "county road system",
it necessarily follows that a determination must be
made as to what constitutes a county road system.  The
Constitution commands that the laying out, constructing
and repairing of county roads shall be provided for by
general laws.  Accordingly, general laws have been en-
acted setting up a State Highway Commission to adminis-
ter State highways and delegating the control of county
roads to the County Commissioners' Courts.  Therefore,
if a public road has been established and used as a
county road, the county would be authorized to expend
money on such county road if the same traversed a city,
and any money expended would be authorized on the im-
provement of streets if the same have been established
and used and are an integral part of a county road.
(Art. 6702-6716, V. C. S.)  By virtue of the Brecken-
ridge case, if the street desired to be improved is a
connecting link in a duly established county road the
same rule would be applicable, the words "connecting
link" meaning to unite or link together.  A connecting
link by its very name must be something that holds two
different elements together.  (38 Pac. (2) 105).

In view of the foregoing it is believed that the streets of Amarillo connecting county roads would be "connecting links" despite the fact that a portion of Amarillo is in Randall County. The only limitation imposed by the physical facts would be jurisdictional, that is, the improvement would go only to the county line. Therefore, it is the opinion of this Department that those roads established as county roads and those city streets of Amarillo forming an integral part of the county road system may be improved by the county with the consent of the city of Amarillo. Further, those streets forming a connecting link for county roads traversing the city of Amarillo may be improved, but only to the county line of Potter and Randall counties.

Your brief furnished this office has materially aided in the discussion of the subject under consideration and is appreciated.

### SUMMARY

County Road and Bridge Funds may be expended in the improvement of county roads passing through a city, though they be streets of such city, provided consent is obtained from the city and such streets are integral parts of the county roads; streets forming a "connecting link" on duly established county roads may be improved by the county with the consent of the city. City of Breckenridge v. Stephens County, 40 S. W. (2) 43; Hughes v. County Commissioners' Court of Harris County, 35 S. W. (2) 818.

Very truly yours,

ATTORNEY GENERAL OF TEXAS

By Burnell Waldrep
Assistant

BW:djm:bb:WB

This opinion was considered and approved in Conference.

APPROVED:

ATTORNEY GENERAL