**EDWARDS v. DALLAS COUNTY et al.**

**No. 14295.**

Court of Civil Appeals of Texas. Dallas.

July 14, 1950.

Rehearing Denied Aug. 4, 1950.

Shirley W. Peters, Dallas, LeRoy Neal, Gladewater, for appellant.

George Hutchison, H. P. Kucera, City Attorney, H. Louis Nichols, Assistant City Attorney, Will R. Wilson, Jr., District Attorney and Harold W. McCracken, Assistant District Attorney, all of Dallas, for appellees.

CRAMER, Justice.

Appellant instituted this suit against the Officials of Dallas County and Drexel & Company et al., alleging in substance, after paragraph No. 1 which only names the parties and their status, that (par. 2) he brings the suit as a property-owning taxpayer within Dallas County, with all taxes paid, and for himself, and as a class suit for the benefit of all persons similarly situated; (par. 3) that the Commissioners' Court of Dallas County entered its order on December 12, 1949, calling an election on the proposition of authorizing the issuance of $22,500,000 in bonds by Dallas County Road District No. 1; (par. 4) and thereafter, pursuant to such order, after due and legal notice (par. 5) the election on January 21, 1950, resulted in favor of the issuance of the bonds; and thereafter the Commissioners' Court canvassed the returns and declared the result. (Par. 6) That the election order and notice itemized and specified the roads which were to be improved with the proceeds of the bonds; (par. 7) which constituted an enforceable covenant that the proceeds of such bonds would be used as therein stated and that they cannot be used for any other purpose; (par. 8) that such itemized projects contemplate the expenditure of approximately 40% of the proceeds from the sale of such bonds on streets located within the corporate limits of the City of Dallas, and (par. 9) that no provision of our statutes authorizes such expenditure and "such expenditure would be wholly unlawful and void"; therefore (par. 10) such election order and notice constituted a fraud upon the property owners and taxpayers of Road District No. 1; (par. 11) that the Commissioners' Court will negotiate the sale of such bonds and levy a tax on all property in the District to pay the principal and interest on such bonds, which (par. 12) will irreparably damage him and cast a cloud on his property, for the relief of which he has no adequate remedy at law.

Appellant prayed that the election be set aside, held null and void, and for injunction, etc.

The Dallas County officials, by their answer, admitted the facts alleged by appellant in paragraphs 3, 4, 5, 6 and 7; denied the facts in paragraph 8, but alleged that approximately 25% of the proceeds of the bonds is for improvement within the limits of the City of Dallas and that such city has, through its City Council, duly given consent to the Road District to make such improvements within its limits; also that such improvements connect with County roads of Dallas County. The officials deny all of paragraphs 9, 10, 11; and affirmatively allege that all of the City of Dallas lies within the boundaries of Road District No. 1 and Dallas County; that the City of Dallas constitutes more than 75% of the taxable values within Road District No. 1, and that all property in the Road District will be assessed equally; that $6,000,000, of such bonds have been sold to Drexel & Company, the low bidders, at an interest rate of 1.74% and an assessment has been levied (to pay the principal and interest on said bonds) on all property within Road District No. 1.

The City of Dallas intervened and adopted the county's pleadings.

On trial to a jury, at the conclusion of appellant's evidence, the trial court sustained Drexel & Company et al.'s motion and rendered judgment in their favor. The court then sustained the city's and county's motions to discharge the jury and render judgment for them that plaintiff recover nothing by his suit. Appellant duly perfected this appeal from the judgment entered on the sustaining of such motion.

Appellant assigns five points of error. The first point complains of the trial court's advancing the cause for hearing and a trial thereon before appearance day, over his objection.

The record shows that at the time the cause was advanced and set for trial, all parties were before the court, by proper pleadings, and the attorney for ap-

pellant was present. It also appears that no prejudice resulted to appellant. Under such showing he has no right to complain soley on the ground that he, as plaintiff, received a speedy trial. The burden is now on appellant to affirmatively show that the error, if any, resulted to his prejudice. Texas Power & Light Co. v. Hering, Tex. Sup., 224 S.W.2d. 191. Being of the opinion that the action of the trial court in advancing the cause for trial, on motion, did not result in prejudice to appellant, or in the rendition of an improper judgment, we hold that no reversible error is shown by the assignment. Rule 434, Vernon's Texas Rules of Civil Procedure. The assignment is overruled.

Points 2 to 5, inclusive, assert error in the trial court's holding in substance (point 2) that the Commissioners' Court could lawfully issue the authorized Road District Bonds for the purposes set out in the election notice and order here involved; (point 3) that the trial court erred in holding that the Commissioners' Court could assume control of and improve streets and highways; (point 4) lay out, open, construct, own, and control roads and highways; (point 5) and acquire right of way for State designated highways, all within the corporate limits of the City of Dallas. They will be considered together.

The record here shows that the parties agreed that a portion of the proceeds from the bonds will be spent within the limits of the City of Dallas, for the following purposes: "It is stipulated by and between plaintiff and the defendants and the intervener, and by and between the attorneys for the plaintiff, the defendants, and the intervener, that a portion of the proceeds to be derived from the $22,500,000 Road District No. 1 Bond Issue is to be expended upon streets located within the corporate limits of the City of Dallas, Texas; that a portion of the funds to be expended on the streets within the corporate limits of the City of Dallas, Texas, are to be expended: (2) for right-of-way on State Highways located within the corporate limits of the City of Dallas, Texas; (b) on right-of-ways and new construction on road projects wholly within the City of Dallas, Texas, and which are not State Highways; (c) on right-of-ways on road projects within the City of Dallas, Texas; (d) on construction on streets located within the corporate limits of the City of Dallas, Texas, which are not State Highways; that all of the projects on which it is contemplated to spend a portion of the funds derived from the bonds either join with or intersect so as to form a connection with County Roads of Dallas County, Texas. It is further agreed and stipulated that of the total amount of the authorized bond issue of $22,500,000, that approximately $5,679,000 thereof is to be spent upon road projects within the City Limits of the City of Dallas, Texas. It is further agreed and stipulated that there are in excess of 20 other incorporated cities and towns within the limits of Road District No. 1 in Dallas County, Texas, other than the City of Dallas, Texas. It is further agreed and stipulated that of the total of the assessed valuation of property for tax purposes within Dallas County, Texas, and within Road District No. 1 thereof, that at least 75 percent thereof is located within the corporate limits of the City of Dallas, Texas."

The resolution duly adopted March 14, 1950, by the Council of the City of Dallas (omitting formal parts) was as follows: " * * * Whereas on January 21, 1950 an election was held in Dallas County Road District No. 1 authorizing the issuance of $22,500,000 of bonds for the purpose of the construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes or in aid thereof throughout said District, including certain streets within the corporate limits of this City which constitute parts of certain roads of said District; and, Whereas, this City should consent to the improvement of said streets by said Road District; Now, therefore, be it resolved by the city council of the city of Dallas: Section 1. That the City of Dallas hereby consents to the improvement of streets within said City by Dallas County Road District No. 1 as authorized by the election above mentioned. Section 2. That this resolution shall take effect from and after the passage as in the

Charter in such cases is made and provided."

■ It appears from the record that the roads and streets to be improved are definitely described and limited in the order and notice of election. No contention is made, as in Grayson County v. Harrell, Tex.Civ.App., 202 S.W. 160 (cited by appellant), that the bonds will be used for other than the purposes and on the identical roads and streets set out in the order and notice. On the contrary, appellant here asserts that they will be used on the streets and roads specified in the notice and order. There is also a presumption that the Commissioners' Court will, in the future, correctly perform its duties.

The material question is whether Road District No. 1 can legally improve and lay out streets within the City Limits of the City of Dallas, as set out in the petition, notice and order for the election. If not; then, and then only, can appellant prevail here.

■ Appellant cites Norwood v. Gonzales County, 59 Tex. 218, 14 S.W. 1057. That case is not in point. The facts are not the same. There was no statutory authority at that time, under the facts in that case, under which the county could have acted. The same is true in Benat v. Dallas County, Tex.Civ.App., 266 S.W. 539, and other cases following the Norwood case. Appellant further asserts that the Commissioners' Court cannot expend the proceeds of the bonds within the City Limits of Dallas without violating the provision of the Special Charter of the City of Dallas. We cannot agree to this proposition. The contrary has been held in Robbins v. Limestone County, 114 Tex. 345, 268 S.W. 915, and in Aransas County v. Coleman-Fulton Pasture Co., 108 Tex. 216, 191 S.W. 553, cited in the Robbins case.

■■ It is true, the charter of the City of Dallas and Article 1175, sec. 16, Vernon's Ann. Texas Civil Statutes, provide for the exclusive dominion and control over the public streets of the city to be in the City of Dallas, but, as stated by the Supreme Court in the above case, such delegation of power and control is but a means by which the Legislature makes it possible to provide a road system for the State. This delegation of power and control to improve roads and streets to the Commissioners' Courts, for Road District No. 1, must be read in connection with the Constitution and Statutes authorized by the creation of Road District No. 1, which Road District is authorized to include in its boundaries cities and towns. If read together and harmonized, there is no inconsistency. Our courts have held directly that Commissioners' Courts may expend county road bond proceeds in the improvement of city streets forming a part of the county's roads, where made with the consent of the city. City of Breckenridge v. Stephens County, opinion by Critz, Commissioner, approved by the Supreme Court, 120 Tex. 318, 40 S.W.2d 43; Smith v. Cathey, 226 S.W. 158, by this Court, opinion by former Chief Justice Rainey. Texas Jurisprudence, Vol. 21, title "Highways," p. 678, sec. 161, States: "Inclusion of City.—As already noticed, county-wide bond funds may be expended on a city street which forms a link in a county and state highway system. A town or city may also be included in a defined road district. For the purpose of computing the bond issuing capacity of the district no account is taken of the bonded indebtedness of the municipality. The district and city are distinct legal entities, and the imposition of a charge upon one does not increase the indebtedness of the other." See, also, sec. 149 at page 668, Id.

Finding no error in the judgment of the trial court, all assignments are overruled, and the judgment affirmed.

Affirmed.