## City of Breckenridge v. Stephens County.

No. 5723.   Decided May 16, 1931.
(40 S. W., 2d Series, 43.)

*Chas. H. Clark, Jones & Brown, Lyndsay D. Hawkins* and *Floyd Jones,* for appellant.

We take it to be unquestionable that the expenditure by the county of county funds for the improvement of a city street is lawful. Cannon v. Healy Const. Company, 242 S. W., 529; City of Corsicana v. Mills, 235 S. W., 220; Smith v. Cathey, 226 S. W., 158; Rev. Civ. Stats., art. 1146.

Neither is the contract sued on invalid because it delegated authority to the city to make a contract which would bind the county. It seems to be well settled that a county may make a binding contract through an agent. Orange County v. Hogg, 269 S. W., 225; Coryell County v. Burke & Corbett, 4 S. W. (2d) 283; Gano v. Palo Pinto Co., 8 S. W. (2d) 634.

*Ben J. Dean, T. B. Ridgell* and *W. J. Arrington,* for appellee.

It clearly appears from the authorities that it was the intention of the Legislature to divest the county of control or supervision over a state highway, and invest the highway commission with the same, and that it was the purpose to permit counties to aid in the construction of state highways and receive state and federal aid only in the manner and under the conditions laid down by law as contained in the statutory provisions directing in what manner county money might be spent in the original construction of the highways, and to vest in the highway commission and in it alone the power to take over state highways and to maintain them thereafter free from any cost of the county.

The provision of the law above quoted that after the highway department has taken over a state highway that no further improvement shall be made under the direct control of the commissioners' court of any county unless and until the plans and specifications for such improvement have been approved by the state highway engineer is mandatory and the commissioners' court would not be authorized to enter into a contract calling for the expenditure of county money upon a state highway where the plans and specifications were not approved by the state highway engineer. The language used in the act is "no further improvement of said system shall be made." Where the term "shall" is used, the presump-

tion is that it is mandatory. McLaren v. State, 199 S. W., 871. Further improvement, of course, would contemplate the expenditure of money, hence, a contract to expend money for the improvement is positively prohibited because the purpose for which the money was to be spent is positively prohibited by this statute. Article 6673, R. S.; article 6674c; article 6674d, R. S.; Robinson v. Limestone County, 114 Texas, 345, 268 S. W., 915,; chapter 190, Acts Regular Session 35th Legislature, p. 416; subdivision 6, art. 10, R. S.; McLaren v. State, 82 Cr. R., 449, 199 S. W., 811; article 6665, R. S.

MR. COMMISSIONER CRITZ delivered the opinion of the court.

The opinion of the Court of Civil Appeals which is reported in 26 S. W. (2d) 405, makes a very comprehensive statement of the facts and issues of this case, and in the interest of brevity we refer to and adopt the statement of that court.

Briefly stated, this suit was filed in the district court of Stephens county, Texas, by the city of Breckenridge, a municipal corporation, against Stephens county, in which such city is located, to recover on a contract executed by the city on the one hand and the county on the other. By the terms of this contract the county agreed to pay a part of the cost of improving one of the streets of the city. The street in question was a connecting link and integral part of a county road and state highway. It is also shown that the county had on hand sufficient funds derived from the sale of county road bonds to discharge the contract at the time it was made.

The opinion of the Court of Civil Appeals discusses various questions presented by the parties to this appeal, but in our opinion there is but one controlling issue involved in this litigation, a decision of which disposes of this case. This question is:

Under the Constitution and laws of this state does the commissioners' court of a county have the authority to expend county road bond funds for the improvement of the streets of incorporated cities and towns located in such county, where such streets are connecting links, and integral parts of county roads or state highways? If the right to expend such funds exists, the right to make a contract so to do must also exist.

After a careful investigation of the authorities, including the Constitution and laws of this state, we have reached the conclusion that the commissioners' court does have lawful authority to expend county road bond funds for the improvement of city streets where such streets form integral parts of county roads or state highways, when such improvements are made without conflicting with the jurisdiction of the municipality, or with its consent or approval. Section 52, art. 3, Texas Constitution; State v. Jones, 18 Texas, 874; Smith v. Cathey (Texas Civ. App.), 226 S. W., 153; Cannon v. Healy Construction Co. (Texas Civ. App.), 242 S. W., 526 (writ refused).

Section 52 of article 3 of our State Constitution authorizes counties and political subdivisions and defined districts thereof to issue bonds for the purpose of:

"(c) The construction, maintenance and operation of macadamized, graveled or paved roads or turnpikes, or in aid thereof."

The constitutional provision above referred to expressly provides that road districts "may or may not include towns, villages or municipal corporations." Thus by the express terms of the Constitution a municipal corporation may be an integral part of a road district. As a part of the road district the property of the city or town is subject to road district taxes just the same as property of the district located outside such municipality. If a city or town is a part of a road district the commissioners' court has the right by the very express provisions of the Constitution to expend road district bond funds on such town or city streets where such streets are parts of and form connecting links in county or state highways.

Where the road bonds are voted by an entire county the incorporated cities and towns located therein are certainly integral parts of the county. It was not necessary to expressly so state in the constitutional provision above metnioned. All taxable property of a county is subject to taxation for the payment of county road bonds. The commissioners' court has the right to expend county road bond funds on county roads and highways in any part of the county. If a street of an incorporated town or city forms a connecting link in the county road or state highway we think it is a county road within the meaning of the statutes to the extent that county funds may be spent for the improvement thereof. Of course the town or city governing board primarily has paramount jurisdiction of the streets and highways thereof, and the commissioners' court would have no authority to improve streets or highways within municipalities in conflict with the jurisdiction of the city to improve the same. However, as in the instant case, where the improvement is made with the consent or approval of the city we find no statutory or constitutional impediment. In fact we think the authorities above cited fully sustain the right.

In State v. Jones, supra, our Supreme Court expressly held that the jurisdiction of the county in highway matters is co-extensive with the limits of the county. It is further held in that case that where the act incorporating a town gives it authority to lay out and improve the public highways within the incorporation the effect of such act is to take from the county its jurisdiction over roads and highways within the incorporation. The opinion then proceeds to demonstrate that the mere fact that the law takes away from the county jurisdiction over highways within the corporate limits of the city or town and confers such jurisdiction on the municipality does not deprive the county of the right to improve a road within the incorporation where it is done without conflicting with

the jurisdiction of the city. We quote the following language from this opinion:

"It has been said in argument, that if the law incorporating the town takes away from the county court the power to lay out and regulate roads within the town limits, and the council do not choose to exercise the power conferred upon it, to lay out streets and highways, then the people of the county will be subjected to the inconvenience of having no road for travel or the transportation of their commerce through the town tract, and will be deprived of the means of visiting the seat of justice and other places of public business established within the town. Such a consequence, in my judgment, by no means follows. Until the town council acts under the authority conferred by its charter, the general authority of the county court over the subject matter continues to exist and may be exercised. It is only when both bodies attempt to set in opposition to, and in conflict with each other, that the power and authority of one must cease and yield to that of the other, and in such a state of things, I am of the opinion that the authority of the county court must yield to that of the town council."

In Smith v. Cathey, supra, it is shown that the commissioners' court of Wood county, Texas, was preparing to expend a part of the proceeds of a county road bond issue to construct a highway within the corporate limits of the city of Winnsboro, a municipality within the county, with a population of two or three thousand. The portion of the road within the city was a part of a county highway. Suit was instituted by a tax-payer to prevent this expenditure on the ground that the county had no jurisdictin over highways within the city limits, and therefore no right to expend county bond funds to improve city streets. The Court of Civil Appeals at Dallas, speaking through Judge Rainey, overruled this contention and held, as follows:

"By subdivision 6 is given power to exercise control and superintendence over all roads and highways in the counties. This is subject to the power usually granted to cities and towns over streets, etc., within its limits, when it chooses to take jurisdiction and the city or town sees proper to exercise such powers. But where the city or town does not deem it proper to exercise such jurisdiction, and does not object to the county keeping up such road or street, the county has the right to do so."

In Cannon v. Haley Construction Co., supra, it is shown that the city of Sulphur Springs and Hopkins county, in which the city is located, entered into a contract for the improvement of a city street, and under the provisions of this contract, the county was to bear part of the cost of such improvement out of the funds derived from the sale of road district bonds. The city was located in, and a part of the road district. The Court of Civil Appeals at Texarkana, speaking through Judge Levy,

upheld the right of the county to expend such funds on the streets in question. We quote the following from Judge Levy's opinion:

"It is evident from the language of the contract that the city commission did in fact undertake to make 'an appropriation' or provision for the payment of the cost apportioned to the city for paving its street. When the conditions of the contract are fulfilled payment to the contractors of compensation is expressly provided therein. The contractors are to be paid in warrants issued by the county commissioners on the special fund, then available, of the county road improvement district No. 1. The special funds of the county road improvement district No. 1 are not, it is true, primarily the tax funds 'of a city.' Simmons v. Lightfoot, 105 Texas, 212, 146 S. W., 872; Moore v. Bell County (Texas Civ. App.), 175 S. W., 849. But it does not follow, as a legal consequence, that no portion of such fund can be used by the county commissioners, or by the county commissioners and the city acting jointly, exclusively within the corporate limits of the city upon the streets determined to be improved. City of Corsicana v. Mills (Texas Civ. App.), 235 S. W., 220. The special funds of county road improvement district No. 1 are by statute required to be used in payment of the cost 'of constructing and maintaining * * * macadamized, graveled, or paved roads' within such road improvement district. Article 627, R. S. The statutory system of improvement of highways expressly provides that 'a defined road district of a county' may include 'towns, villages or municipal corporations of the county.' Article 631, R. S. The streets of the city, then, become an integral part of the road district, entitled to be improved, the cost to be payable with warrants issued against such special funds of the road district. The statute does not expressly or impliedly deny authority to the county commissioners to make apportionment of a proper and reasonable portion of the special fund to be used within the corporate limits of the city upon streets, as a part of the highway, determined to be improved. The statute does grant to towns and cities the special power to control, improve, and order the improvement of any street within the corporate limits. Articles 1006-1010, R. S.; Special Charter City of Sulphur Springs, Special Acts 1911, p. 414. In thus exercising the power given over the improvement of its streets the city would not be doing an act violative of the law and its charter. And if the commissioners' court voluntarily made apportionment of proper and reasonable portion of such special fund to be used in improvement of the city streets, as an integral part of the district highway, the county commissioners would not thereby be doing an act prohibited to them."

In our opinion Judge Levy has correctly stated the law as applied to the power of counties to expend road bond funds on the streets of incorporated cities and towns, and we here expressly adopt and approve his holding.

From what we have said it is evident that we hold that under the Constitution and laws of this state the county in the instant case had the right to make the improvement in question here. Of course if the county had the right to make the contract so to do.

We have carefully examined the contract in question and we find no portion of it in violation of any law of this state.

It follows from what we have said that the judgments of the Court of Civil Appeals and district court should both be reversed and judgment here rendered in favor of the city of Breckenridge for the amount sued for.

The foregoing opinion is adopted as the opinion of the Supreme Court, and judgment will be entered in accordance therewith.

C. M. Cureton, Chief Justice.