Honorable Neal E. Birmingham District Attorney P.O. Box 940 Linden, Texas 75563
Re: Whether a county commissioner acting as ex officio road commissioner may use county equipment, materials, and employees to lay out a road within limits of an incorporated city (RQ-1283)
Dear Mr. Birmingham:
You ask whether a county commissioner acting as ex officio road commissioner may use county equipment, materials, and employees to lay out a road or alleyway within the corporate limits of a city in the commissioner's precinct when the road or alley is not part of the county road system. We conclude that under the facts you provide a county commissioner would have no such authority.
You supply the following information as background. Several years ago the commissioners court of Cass County adopted a resolution authorizing the county to assist the city of Bloomburg, Texas. You state that the resolution is phrased in general terms and does not specify a particular project. You believe that it was intended to authorize county assistance to the city pursuant to article 2352j, V.T.C.S. That statute authorizes the commissioners court of a county to use county road equipment, construction equipment, and employees to assist another governmental entity on any project under certain conditions.
You also inform us that several years after the resolution was adopted, a county commissioner, purportedly acting in his capacity as ex officio road commissioner, directed county employees to lay out an alleyway in the city of Bloomburg with county equipment and materials. You allege that the alley serves no public use and provides no public benefit other than to provide access to fuel pumps at a business establishment owned by the commissioner's son. You add that the commissioners court did not specifically approve the project. The city council did not request the county's assistance on the project, although you suggest that the mayor may have requested such assistance from the commissioner. It is also alleged that the project was completed in a manner that complies with article 2352j.
The question you have submitted for our consideration is whether a county commissioner, acting as ex officio precinct road commissioner, may use county equipment, materials, and employees to open up and lay out an alleyway within the corporate limits of a city when the alleyway forms no part of the county road system. You also ask us to determine whether the actions described in your letter are lawful and, if they are not, what sanctions are available to deter such actions in the future.
With respect to your two final requests, we must first note that the procedures instituted by subchapter C of chapter 402 of the Government Code do not clothe this office with the authority to make findings of fact in the course of rendering an Attorney General's Opinion. We therefore assume the facts are as you present them, and express no opinion regarding the accuracy of any of the allegations made in your letter requesting this opinion. Also, this office will not in an Attorney General's Opinion presume to advise your office on the proper exercise of prosecutorial discretion or on the availability of a remedy in a particular case. But see Govt. Code § 402.043 (attorney general shall advise a district or county attorney regarding cases before district or inferior courts in which the state is interested on the attorney's request and after his investigation and submission of a brief to this office). Accordingly, this opinion is confined to the narrow legal issues presented by your first question.
County commissioners serve as ex officio road commissioners pursuant to chapter 3, subchapter A of article 6702-a, V.T.C.S. Subchapter A applies to a county only if the commissioners court adopts the subchapter by an order of the court at a meeting where all members are present. V.T.C.S. art. 6702-1, § 3.004(b). The relevant powers and duties of the commissioners court and ex officio road commissioners are set forth in the following provisions:
Ex officio commissioners
 Sec. 3.001. (a) In all counties the members of the commissioners court are ex officio road commissioners of their respective precincts and under the direction of the commissioners court have charge of the teams, tools, and machinery belonging to the county and placed in their hands by the court. They shall superintend the laying out of new roads, the making or changing of roads, and the building of bridges under rules adopted by the court.
 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 Sec. 3.002. (a) The commissioners court shall adopt a system for working, laying out, draining, and repairing the public roads as it considers best, and from time to time the court may change its plan or system of working. The court may purchase teams, tools, and machinery necessary for the working of public roads and may construct, grade, or otherwise improve any road or bridge by contract in the manner provided by Subchapter B of this chapter.
 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 Sec. 3.003. (a) Subject to authorization by the commissioners court, each ex officio road commissioner may employ persons for positions in the commissioner's precinct paid from the county road and bridge funds. Each ex officio road commissioner may discharge any county employee working in the commissioner's precinct if the employee is paid from county road and bridge funds. Each ex officio road commissioner also has the duties of a supervisor of public roads as provided by Section 2.009 of this Act.
 (b) Each county commissioner, when acting as a road commissioner, shall inform himself of the condition of the public roads in his precinct, shall determine what character of work is to be done on the roads, and shall direct the manner of the grading, draining, or otherwise improving the roads, which directions shall be followed and obeyed by all road overseers of his precinct. (Emphasis added.)
Id. §§ 3.001(a); 3.002(a); 3.003(a), (b).
An ex officio road commissioner also has the duties of a supervisor of public roads within his precinct. A road supervisor is required to "supervise the public roads" in the precinct once each month and submit a sworn report to each regular term of the commissioners court showing the following:
(1) the condition of all roads and parts of roads in his precinct;
(2) the condition of all culverts and bridges;
 (3) the amount of money remaining in the hands of overseers subject to be expended on the roads within his precinct;
(4) the number of mileposts and fingerboards defaced or torn down;
 (5) what, if any, new roads of any kind should be opened in his precinct and what, if any, bridges, culverts, or other improvements are necessary to place the roads in his precinct in good condition and the probable cost of the improvements; and
 (6) the name of every overseer who has failed to work on the roads or who in any way neglected to perform his duty. (Emphasis added.)
Id. § 2.009(a). The supervisor's report is spread on the minutes of the commissioners court "to be considered in improving public roads and determining the amount of taxes levied for public roads." Id. § 2.009(b). The report must also be submitted to the grand jury at the term first following the report to the commissioners court, together with any contracts made by the court since its last report for work on any road. Id. § 2.009(c).
The underscored language in sections 3.001 to 3.003 reflect the general understanding that the commissioners court maintains general supervisory control over ex officio road commissioners. See Attorney General Opinion JM-801 (1987). However, an ex officio road commissioner acting alone may discharge any county employee working in his precinct if the employee is paid from county road and bridge funds. V.T.C.S. art. 6702-1, § 3.003(a); Attorney General Opinion MW-362 (1981) (construing former article 6763, V.T.C.S.). It is also understood that a county commissioner acting as ex officio road commissioner may not bind the county to pay claims that are not necessary or proper expenditures of county funds. Attorney General Opinion JM-170 (1984). In Attorney General Opinion JM-334 (1985) we were asked whether a county commissioner acting as ex officio road commissioner could maintain a private road in his precinct. The opinion did not discuss the scope of a commissioner's authority under sections 3.001 to 3.004, but concluded that the commissioners court did not have general authority to maintain private roads in the county. Compare Tex. Const. Art. III, § 52f (authorizing counties with population of 5,000 or less to maintain private roads for a fee). If the commissioners court has no such general authority, it follows that an ex officio road commissioner possesses no such power, his authority being subject to commissioners court direction. V.T.C.S. art. 6702-1, § 3.001(a).
The emphasized language in section 2.009(a) clearly indicates that a road supervisor has no independent authority to commit county resources to any project, but instead serves to inform the commissioners court of road conditions and availability of funds and to recommend new projects or maintenance work. See Attorney General Opinion MW-331 (1981). The commissioners court retains general supervisory authority over road supervisors. Guerra v. Rodriguez, 239 S.W.2d 915, 920 (Tex.Civ.App.-San Antonio 1951, no writ). See also V.T.C.S. art. 2351, subdivs. 2. and 5. (commissioners court's powers over public roads). The commissioners court remains responsible for authorizing improvements and levying the taxes needed to pay for such projects. V.T.C.S. art. 6702-1, § 2.009(b). It must act as a body in fulfilling its duties respecting the public roads of the county and generally may not delegate such duties to road supervisors. Attorney General Opinion MW-331 (1981). A county commissioner, then, has no authority to individually bind the county when acting as road supervisor. Id. Whatever authority a county commissioner exercises as road supervisor must be founded upon section 2.009 and cannot generally be delegated by the commissioners court. Id.
Your question raises two issues. The first concerns the conditions under which an ex officio road commissioner may direct county employees to perform roadwork with county equipment. The second concerns the county's authority to spend county funds to construct, improve, maintain, or repair roads within the corporate limits of a city or town in the county.
Turning to the first issue, the previous discussion demonstrates that an ex officio road commissioner's authority under article 6702-1, section 3.003(b), to "direct the manner of grading, draining, or otherwise improving the roads" of his precinct is subject to direction from the commissioners court, section 3.001(a). Under your version of the facts, there is some question whether the commissioners court exercised sufficient supervisory control over the ex officio road commissioner to authorize the construction of the alley in question.
It is argued that the commissioner's actions were authorized by the resolution of the commissioners court adopted pursuant to article 2352j, V.T.C.S. That statute provides the following in major part:
 A commissioners court of a county may use its road equipment . . . and employees necessary to operate the equipment to assist another governmental entity on any project so long as the cost does not exceed $3,000 if:
 (a) the use of the equipment or employees does not interfere with the county's work schedule; and
 (2) the county does not pay any costs related to the use of the equipment or employees that the county would not pay if the assistance were not given to the other governmental entity. (Emphasis added.)
Assuming for the moment that article 2352j governs in this instance, we do not believe that the adoption of a resolution in general terms is sufficient to authorize county assistance to another governmental entity under the statute. First, we note that the statute confers authority on the commissioners court and not on individual commissioners. The authority conferred must therefore be exercised by the commissioners court as a unit, and no individual commissioner has independent authority to commit county resources to assist another governmental entity. See Canales v. Laughlin, 214 S.W.2d 451, 454-455 (Tex. 1948); Attorney General Opinion Nos. MW-331 (1981); WW-1401 (1962). Second, the language of article 2352j relating to costs and the use of county equipment and employees strongly suggests that the commissioners court, in order to make an informed and responsible decision, must review and approve specific projects in advance of their undertaking. It is doubtful that a resolution committing unspecified county assistance of uncertain cost to a city or town at some time in the future would serve this purpose. In the absence of commissioners court approval of a particular project, a county commissioner has no authority to direct county employees to provide assistance to a municipality in the county pursuant to article 2352j.[1]
We do not believe article 2352j governs in this instance, however. Section 2.010 of article 6702-1 addresses the county's authority to construct, improve, or maintain roads within the corporate limits of a city. Section 2.010 prescribes the procedures for authorizing such work, the types of projects that may be undertaken, and the methods whereby such work may be performed or financed. It contains the following relevant language:
 (a) The commissioners court of a county may expend county funds to finance the construction, improvement, maintenance, or repair of a street or alley located in the county within the limits of an incorporated city or town if the work on the street or alley is done with the consent and approval of the governing body of the city or town. (Emphasis added.)
V.T.C.S. art. 6702-1, § 2.010(a). The county's authority thus hinges on the consent or approval of the governing body of the city or town in which the work is to be done. It is also clear that the statute confers authority on the commissioners court, which must act as a body in approving the expenditure of county funds to finance such projects. See generally Canales v. Laughlin, supra; Attorney General Opinion MW-331 (1981).
Two rules of statutory construction support the conclusion that section 2.010 rather than article 2352j is the controlling statute. One familiar and established rule is that when two statutes concern the same general subject matter, the more specific statutory provision prevails. See Garza v. State,687 S.W.2d 325 (Tex.Crim.App. 1985). Another is that in the case of a clear conflict between two statutes, the later expression of legislative intent prevails to the extent of the conflict. Brown v. Patterson, 609 S.W.2d 287 (Tex.Civ.App.-Dallas 1980, no writ). Section 2.010 is the more specific and recent expression of legislative intent. Compare Acts 1985, 69th Leg., ch. 625, at 2323 (enacting section 2.010) with Acts 1981, 67th Leg., ch. 260, at 668 (enacting article 2352j).
Section 2.010 codifies in part the rule developed by the courts concerning the authority of a county to construct, improve, repair or maintain roads within the boundaries of a city. That rule states that a county may exercise such limited authority over city streets provided the city consents and provided further that such streets form an "integral part" of the county road system or a "connecting link" therewith. City of Breckenridge v. Stephens County, 40 S.W.2d 43 (Tex. 1931); Hughes v. County Commissioners Court of Harris County, 35 S.W.2d 818
(Tex.Civ.App.-Galveston 1931, no writ); Attorney General Opinion Nos. H-1018 (1977); WW-1401 (1962); V-971 (1949); V-261 (1947); O-7465 (1946); O-4256 (1941). The consent of the municipality is required because, as a general matter, both general law municipalities and home rule cities have exclusive control over their streets, alleys, and public highways and their incorporation removes from the commissioners court the authority to construct or maintain roads within their boundaries. See Attorney General Opinion H-1018 (1977). The "integral part/connecting link" requirement is the result of article III, section 52(b), of the Texas Constitution which authorizes counties, other political subdivisions, or "any defined district . . . which may or may not include" municipalities to issue bonds for, among other purposes, the construction and maintenance of roads. The supreme court determined long ago that since municipalities may be an "integral part" of a road district, the commissioners court may expend road district bond funds on town or city streets "where such streets are parts of and form connecting links in county or state highways." City of Breckenridge v. Stephens County, 40 S.W.2d 43, 44 (Tex. 1931).
Section 2.010 does not expressly impose this latter requirement. We note, however, that upon its original enactment, the County Road and Bridge Act did not purport to expand the powers of the commissioners court. Rather, it was merely intended as a revision of the laws concerning county roads and bridges. Acts 1983, 68th Leg., ch. 288, at 1431 (caption). We are constrained to interpret section 2.010 in that light. Accordingly, the commissioners court of a county may spend county funds to finance the construction of a street or alley located within the boundaries of an incorporated city or town in a manner provided in section 2.010 if the governing body of the city or town consents and the street or alley is an integral part of the public roads or highways of the county or a connecting link therewith.
Under your description of the facts, it is apparent that the commissioners court took no action pursuant to section 2.010 with respect to the specific project in question. Furthermore, the facts you describe do not indicate that the governing body of the city gave its consent or approval to the project. Thus, in the circumstances you describe a county commissioner acting as ex officio road commissioner would not be authorized to use county equipment, materials, and employees to construct an alleyway within the corporate limits of a city in the commissioner's precinct.
We note in closing that a county may construct roads within a city that are not public roads of the county by a contract made in accordance with the provisions of Interlocal Cooperation Act, V.T.C.S. article 4413(32c). Attorney General Opinion H-1018
(1977).
 SUMMARY
In the absence of commissioners court approval pursuant to section 2.010 of article 6702-1, V.T.C.S., or a contract made in accordance with the provisions of the Interlocal Cooperation Act, article 4413(32c), V.T.C.S., a county commissioner acting as ex officio road commissioner has no independent authority to use county equipment and employees to construct a road or alley within the corporate limits of a city located in the commissioner's precinct.
Very truly yours,
 Jim Mattox Attorney General of Texas
 Mary Keller First Assistant Attorney General
 Lous McCreary Executive Assistant Attorney General
 Judge Zollie Steakly Special Assistant Attorney General
 Rick Gilpin Chairman Opinion Committee
 Prepared by Steve Aragon Assistant Attorney General
[1] We should note that article 2352j raises questions under article III, section 52 of the Texas Constitution because there is no express requirement that the county receive an adequate consideration or quid pro quo for the assistance it provides to the other governmental entity. Also, a proposed amendment to article III, which would authorize the use of county employees and equipment to perform work for another governmental entity without compensation, was defeated by the voters at the November 3, 1987 election. The proposed amendment contained language virtually identical to article 2352j. See text of proposed Tex. Const. art. III, § 52g (reprinted in 1988 cumulative annual pocket part for vol. 1A, Vernon's Annotated Constitution of Texas). We need not decide this issue at this time, for we conclude that article 2352j is inapplicable in this instance.